# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS TAYLOR, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LORI SCIALABBA, Acting Director, ) <br> U.S. Citizenship & Immigration Services, and ) <br> JOHN KELLEY, Secretary, Department of ) <br> Homeland Security, ) <br> ) <br> Defendants. ) | Case No. 16-cv-10754 <br><br> Hon. Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Thomas Taylor ("Taylor") brought the present Complaint against Defendants Lori Scialabba, Acting Director of U.S. Citizenship & Immigration Services, and John Kelley, Secretary of the Department of Homeland Security, collectively "Defendants," requesting declaratory and mandamus relief with regard to his waitlisted application for nonimmigrant "U-status." Defendants have moved to dismiss Plaintiff's complaint contending that the Court lacks jurisdiction to hear Plaintiff's claims and that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

### I.  Statutory and Regulatory Framework

Immigration is governed by the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1503, and its accompanying regulations. In October 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000 ("Crime Victims Act"), Pub. L. 105–386,

114. Stat. 1464, which amended the INA and created a new nonimmigrant visa classification for certain aliens who have been victims of serious crimes.  *See* 8 U.S.C. § 1101(a)(15)(U).  Five years later, on January 5, 2006, Congress passed the Violence Against Women and Department of Justice Reauthorization Act of 2005 ("Violence Against Women Act"), Pub. L. 109–162, 828, 119 Stat. 3066, which directed the Secretary of Homeland Security to promulgate regulations implementing Section 1101(a)(15)(U) of the Crime Victims Act.  The law mandated the Secretary of Homeland Security to promulgate regulations no later than 180 days after the Act was enacted, but United States Citizenship and Immigration Services ("USCIS") only published these rules—the "U-visa regulations"—in September 2007, more than 180 days beyond the date that the Violence Against Women Act was enacted.  (R. 1, Pl.'s Compl. ¶¶ 4-5.)  As a result, USCIS did not begin issuing U-visas until 2009.  (*Id.* ¶¶ 9, 34.)

In essence, these regulations allow an alien who both (i) falls victim to a serious crime and (ii) provides meaningful assistance to law enforcement, to apply for a U-visa.  *See* 8 C.F.R. § 214.14(d)(2); 8 U.S.C. § 1184.  USCIS, however, has a cap on the number of U-visas that it may issue each year.  8 U.S.C. § 1184(p)(2)(B).  The total number of aliens who may be issued a U-1 nonimmigrant visa, or granted U-1 nonimmigrant status, may not exceed 10,000 in any fiscal year, not including visas for derivative family members.  *Id.*  Once the fiscal year limit of 10,000 U-visas is met, USCIS may not grant any further U-visas until new visas become available the following fiscal year.  (Pl.'s Compl. ¶ 10.)  USCIS, however, grants eligible petitioners deferred action, a discretionary form of relief that defers any removal action and grants certain employment authorization benefits, since these petitioners are unable to acquire U-visas solely due to the fiscal limit.  (*Id.*)  These petitioners are placed on a waiting list.  (*Id.*)  The regulations

provide that qualifying family members of waitlisted applicants will also receive deferred action. 8 C.F.R. § 214.14(d)(2).

## II. Facts

Plaintiff, Thomas Taylor, a native and citizen of Ireland, resides in Cook County, Illinois and last entered the United States in April 2000 as a B-2 visitor. (*Id.* ¶ 21.) Plaintiff's wife, Josephine Cronnolly, is a qualifying family member who also entered the United States as a B-2 visitor. (*Id.*) In October 2008, Plaintiff was a victim of perjury in Chicago, Illinois, a crime that qualifies him to apply for a U-visa. (*Id.*) He applied for a U-visa and USCIS tentatively approved him for U nonimmigrant status and granted him deferred action on September 7, 2016. (*Id.*) Plaintiff alleges that although he is eligible to receive a U-visa, USCIS has not granted him a U-visa due solely to the fiscal year limit. (*Id.* ¶ 28.) As a result, USCIS placed Plaintiff and his wife on a waiting list until new visas become available. (*Id.*)

Plaintiff alleges that USCIS delayed promulgating U-visa regulations for seven years, despite a congressional mandate to do so since October 2000, and that this delay directly caused him to be placed on a waiting list instead of receiving his U-visa immediately. (*Id.* ¶¶ 3, 28-29.) Plaintiff contends that because USCIS is required to issue 10,000 U-visas per year, the seven-year delay caused a backlog of 80,000 unused U-visas. (*Id.* ¶¶ 3, 29.) According to Plaintiff, not only has this delay deprived him of U-nonimmigrant status, it has also delayed his eligibility for lawful permanent residence status because the regulations require that an individual possess U-nonimmigrant status for three years prior to applying for lawful permanent residency, and Plaintiff's three-year period has not started because he has not yet received a U-visa. (*Id.*)

Accordingly, Plaintiff seeks relief under the Mandamus Act, 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), the Declaratory Judgment Act, 28

3

U.S.C. § 2201, and the INA, and requests the Court to compel the USCIS to issue 80,000 U-visas, including Plaintiff's, *nunc pro tunc*. (*Id.* ¶ 14.)

## LEGAL STANDARDS

For purposes of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, to survive a 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). A Rule 12(b)(1) motion, in contrast, challenges federal jurisdiction, and the plaintiff bears the burden of establishing the elements necessary for jurisdiction, including standing, have been met. *Scanlan,* 669 F.3d at 841–42. In ruling on a 12(b)(1) motion, the Court may look outside of the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995).

## ANALYSIS

Defendants argue that Plaintiff's complaint fails because (1) Plaintiff lacks standing to bring a claim and (2) Plaintiff fails to state a claim under the APA or the Mandamus Act because the U-visa statute explicitly bars the relief Plaintiff requests by capping the number of U-visas at 10,000 per year. The Court addresses each argument in turn.

4

**I.     Plaintiff Lacks Standing**

Federal courts' jurisdiction depends on whether a plaintiff has constitutional standing. *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) ("standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action") (citations omitted). To establish standing, a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Defendants challenge Plaintiff's standing to bring their claim for U-visas under each requirement, but the Court will focus on redressability because the Court's analysis of that element makes clear that Plaintiff lacks standing.

As another court in this district found in a nearly identical case, Plaintiff lacks "standing to bring [his] U-visa claim because the requested relief is illusory." *Patel v. Rodriguez*, No. 15-CV-486, 2015 WL 6083199, at *5 (N.D. Ill. Oct. 13, 2015). In *Patel*, the court explained that it was not in dispute that the INA caps the number of U-visas that may be issued to 10,000 per year. *Id*. The court noted that the relevant statute, 8 U.S.C. § 1184, provides that "[t]he number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section 101(a)(15)(U) . . . in any fiscal year shall not exceed 10,000." *Id*. The court found that the term "shall" "denotes a clear congressional directive, and based on this statutory cap, the USCIS lacks the authority to exceed it," and accordingly, the court could not redress any harm suffered by the plaintiff. *Patel*, 2015 WL 6083199, at *5 (citing *Iddir v. INS,* 301 F.3d 492, 501 (7th Cir. 2002)). The *Patel* court's reasoning applies here. Plaintiff admits that USCIS may only issue

5

10,000 U-visas per year and that the cap for 2016 has been reached, (*see* Compl. ¶¶ 8, 12),[1] and as such, it follows that there are simply no U-visas to issue, much less 80,000. The Court, like the court in *Patel*, is thus unable to provide relief, and accordingly, Plaintiff does not have standing to bring this claim.[2] *See also Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 880 (N.D. Cal. 2008), *aff'd sub nom. Catholic Charities CYO v. Napolitano*, 368 F. App'x 750 (9th Cir. 2010) (dismissing claim for U-visa in part for lack of standing because USCIS has "discretion by law" to issue U-visas).

## II.  Plaintiff Has Failed to State a Claim

Even if Plaintiff had standing, his claims would still fail. "To succeed on a claim for unreasonable delay under the APA or the Mandamus Act, a plaintiff must show (1) that the agency failed to take a clear, nondiscretionary act that it is required to take, (2) that the delay is unreasonable, and (3) that there is no other adequate avenue for relief." *Patel*, 2015 WL 6083199, at *5–6 (citing *Norton v. S. Utah Wilderness Alliance* ("*SUWA* "), 542 U.S. 55, 65 (2004)). Plaintiff contends that there was seven-year delay before USCIS issued regulations initiating the U-visa application process, (*see* Compl. ¶ 3), but, as many courts have recognized, the delay here was one year, not seven years because "Congress did not issue a directive to promulgate regulations to implement the program until it enacted the Violence Against Women Act in 2005," which gave USCIS 180 days—or until July 5, 2006—to issue regulations. *Catholic Charities*, 622 F. Supp. at 878–79. Since USCIS issued the final regulations on September 17, 2007, "any delay that can be attributed to [USCIS] regarding the promulgation of

---

[1] *See also* USCIS, *USCIS Approves 10,000 U Visas for 7th Straight Fiscal Year*, https://www.uscis.gov/news/uscis-approves-10000-u-visas-7th-straight-fiscal-year (stating that statutory cap of U-visas has been reached for 2016).
[2] Plaintiff does not have standing regardless of whether his claimed injury is the denial of his U-visa or his resulting inability to accumulate time towards lawful permanent resident status because both alleged injuries result from USCIS delaying his U-visa, and as discussed above, the Court cannot redress this harm.

"U" visa regulations is at most 14 months." *Id*. at 879; *see also Patel*, 2015 WL 6083199, at *5 (noting same). Here, as in *Patel*, Plaintiff has failed to allege or explain why this one-year delay was unreasonable, and thus, even if Plaintiff had standing, he has failed to allege sufficient facts to state a claim for relief.[3]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiff's Complaint with prejudice.

**DATED: April 12, 2017**                                **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge

---

[3] To the extent Plaintiff claims that USCIS has unreasonably delayed the processing of his specific U-visa, this claim also fails because Plaintiff has not alleged anything unreasonable about his specific delay in receiving a U-visa. As the court in *Patel* explained, there is nothing unreasonable about a specific applicant having to wait to receive a U-visa given that: "(1) the INA caps the number of U-visas that may be issued each year; (2) U-visa applicants on the waiting list are processed according to the date their petitions are filed; and (3) Plaintiff[] ha[s] remained on the waiting list because there is a long line of applicants ahead of [him]." *Patel*, 2015 WL 6083199, at *6. Here, Plaintiff is subject to the same procedures and waiting list as any other U-visa applicant, and accordingly, any delay in his receipt of a U-visa is not unreasonable.